No. ——

First Circuit

BALDWIN v. McCAIN

(June 5, 1926. Opinion and Decree.)
(June 26, 1926. Rehearing Refused.)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Chattel Mortgages— Par. 4; Sales—Par. 311.**

The vendor's privilege on an engine secured by a chattel mortgage recorded in another parish becomes extinct when the property to which this engine had been attached and become an immovable by destination was sold to a third person.

Appeal from the Thirteenth Judicial District, Parish of St. Landry. Hon. B. H. Pavy, Judge.

Action by A. Baldwin & Company, Ltd., against Walton McCain. Opelousas-St. Landry Bank & Trust Company, intervenor.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Sandoz & Sandoz, of Opelousas, attorneys for plaintiff, appellant.

Dubuisson, Perrault & Burleigh, of Opelousas, attorneys for defendant, appellee.

ELLIOTT, J. Action by the vendor of an engine, against the present owner of the engine, to have the vendor's privilege recognized for the balance due on the purchase price. The present owner of the engine purchased the plantation from the original purchaser of the engine after the engine had been made immovable thereon by destination. He then sold the plantation. He then afterwards assumed the balance due on the engine and then afterwards re-acquired the plantation with the engine thereon as part of the immovable.

A. Baldwin & Co., Ltd., brought suit against Walton McCain on a note for $3514.61 and to have recognized the vendor's privilege on an engine, to the extent of the balance due thereon amounting to $1167.29.

The plaintiff alleges that it sold the engine to one W. R. Tilton. That the balance due on the engine by Tilton was included in the note sued on. That said McCain by assuming the balance due on the purchase price kept the vendor's privilege on the engine in existence and that when said McCain reacquired the ownership of the same the privilege attached. The prayer is that the vendor's privilege on the engine be recognized and enforced in the manner and form prescribed by law.

Defendant's answer admits that the note sued on includes the sum of $1167.29 left unpaid on the engine by Tilton, but alleges that Tilton, after buying the engine, installed it in the irrigation plant on his rice plantation, making it immovable by destination. That Tilton then sold and delivered the plantation to defendant with the engine thereon as part of the immovable. That under the law, when Tilton parted with his possession of the engine the privilege which then existed on the engine in favor of the plaintiff ceased to exist. Defendant denies that a privilege exists on the engine in plaintiff's favor.

Opelousas-St. Landry Bank & Trust Co., intervenors, join defendant in resisting plaintiff's demand for privilege. Intervenor alleges that it is the owner and holder of a certain promissory note secured by special mortgage on said plantation amounting to $16,960.00. That its security

will be impaired and diminished by the recognition of the privilege claimed by the plaintiff. That its said mortgage bears on said engine as part of the immovable. That Tilton sold and delivered the plantation to McCain. That McCain sold and delivered same to O. L. & H. B. Redlich and Gus A. Baillio and they retroceded same to McCain, who then granted thereon said mortgage of which intervenor is the owner and holder. That the vendor's privilege which existed on the engine while it belonged to Tilton ceased to exist when Tilton sold and delivered the property to McCain. That the assumption of the balance due on the engine by McCain, after he had sold and delivered the property to Redlich, etc., did not keep the privilege in existence; that no privilege exists on the engine in favor of the plaintiff. The district judge, for written reasons, refused to recognize plaintiff's demand for privilege. Plaintiff appealed.

On April 17, 1918, Walter McCain and W. V. Norman sold and delivered to W. R. Tilton a rice plantation situated in the Parish of Acadia. On or about July 15, 1918, A. Baldwin & Co., Ltd., sold and delivered to W. R. Tilton an 85 H. P. Muncie left-hand crude oil engine with fittings, fixtures, air starter, air tank and air compressor complete. Tilton executed his note for $3185.27 secured by a chattel mortgage on the engine and its equipment to cover the credit part of the price, but the act of mortgage was never recorded in the Parish of Acadia. Tilton installed the engine in the irrigation plant on his rice plantation for its service and improvement. It can be unscrewed from its foundation, but we are satisfied that the engine was made immovable on the plantation by destination. Tilton made payment on the engine reducing the amount to $1167.29, which is still due and has never been paid. On October 18, 1919, Tilton sold the plantation to Walton McCain. The engine is not mentioned in the act of sale, but the general description, "the following described tract of land, together with all the buildings and improvements thereon and appurtenances thereunto belonging", followed by a description of the land, covers the engine, made immovable thereon by destination. On December 12, 1919, McCain sold and delivered the plantation to O. L. & H. B. Redlich and G. A. Baillio, and on April 9, 1921, they re-troceded the plantation to McCain and McCain on the same day granted a mortgage on it in favor of St. Landry Bank & Trust Co. for $16,960.00, now held by intervenor, all as alleged in the pleadings. Plaintiff moved on the trial to have the privilege which it claims taken as confessed by defendant and intervenor, but the lower court refused to grant the motion and we think the ruling was correct. The existence of the privilege claimed by plaintiff does not follow as a legal consequence of the facts admitted by defendant and intervenor. According to their averments plaintiff has no privilege. Plaintiff subsequently urged an estoppel by record against defendant and an exception of no cause of action against intervenor based substantially on the same admissions. These exceptions were also overruled and we think properly for the same reason that the privilege was not confessed.

The plaintiff in its answer to the intervention urged an estoppel in pais against intervenor, based on statements which an officer of the intervening bank is alleged to have made to plaintiff to the effect that the bank did not claim to have an interest in the engine. The lower court does not mention this plea in the reasons for judgment. The plaintiff

urges this plea in its brief, but it does not seem possible that intervenor's mortgage rights could be defeated by such a statement, even if it had been made, unless it was in fact true. Plaintiff does not aver that its privilege was impaired by the statement, or that it was thereby induced to pursue a course to the detriment of its rights, which it would not have pursued if the statement had not been made. Therefore, if the statement was made, there would be no estoppel in pais. In such a situation there was no question before the court except as to the existence of the privilege. The court properly heard plaintiff and defendant concerning the matter alleged, not that intervenor was estopped, but whether or not the vendor's privilege claimed by plaintiff existed.

On June 7, 1920, Walton McCain called on A. Baldwin & Co., Ltd., in New Orleans and asked the plaintiff to accept his note for the purpose of closing his account and to include in it the balance due by Tilton on the purchase price of this engine. The plaintiff consented and the note sued on was executed, the defendant thereby assuming said indebtedness on the engine and promising to pay it to the plaintiff. At that time the plantation with the engine on it was in the possession of Redlich, etc., by title from McCain. The plaintiff contends that although McCain was not in possession of the engine at the time of the said assumption, that as he had bought the engine from Tilton and then sold it to Redlich, etc., and that as he had then, after selling the property to Redlich, assumed the balance due on the engine by Tilton and obligated himself to pay it to the plaintiff, that when McCain subsequently reacquired the plantation with the engine on it from Redlich, etc., by act of retrocession, that the vendor's privilege instantly attached to the engine just as if he had expressly assumed it in the act of purchase from Tilton. Plaintiff's position in the matter is very strong for the reason that we are satisfied that McCain knew at the time he bought from Tilton that Tilton owed plaintiff on the engine. The act of sale does not say so, and makes no mention of the balance due plaintiff on the engine, but defendants voluntary assumption of the amount on June 7, 1920, indicates it so strongly that we think the presumption established; but in the absence of an express assumption of the privilege on the part of defendant, the fact that he was aware at the time of buying that Tilton had not finished paying for the engine did not suffice to keep the privilege in existence.

The cases of Powers vs. Hubbell, 12 La. Ann. 403, and De l'Isle vs. Moss, 34 La. Ann. 164, support the existence of the privilege in such a situation, but these decisions are against the law on the subject and appear to have been overruled by later cases and to be inconsistent with an earlier case. According to the law, C. C. Arts. 3217, No. 7; 3287 and 3263, the privilege ceased to exist when Tilton sold and delivered the property to McCain.

In Hays vs. Crockett, 7 La. Ann. 645, the court held:

"It is contended that the purchase was a fraud upon the vendor, having been made with knowledge of his rights out of the usual course of business, to the injury of plaintiff. It is evident that Maddox knew of the embarrassment of the firm of Crockett, Frost & Co. He perhaps knew that they were insolvent and it is not improbable that he knew that the plaintiffs were their creditors, but it is by no means certain that he was acquainted with the nature of their privilege."

In Dreyfous vs. Cade, 138 La. 297, 70 South. 231, the court went further. The syllabus reads in part:

"The purchaser of movable property on credit may sell it to a third party who knows that he has not paid the price and the original vendor loses his privilege therefor when the property passes out of the possession of his purchaser and into the possession of a third person."

In Pierson vs. Carmouche, Max Barnett, etc., Opponent, 146 La. 798, 84 South. 59, the court held:

"A purchaser on credit of movable property may validly give it in pledge to a third person who knows that he has not paid the price, but is otherwise in good faith, so as to vest in the pledgee a right superior to that of the vendor whose privilege thereupon ceases by reason of the property having passed out of the possession of the vendee."

In Boylans, etc., vs. Brown, etc., 157 La. 325, 102 South. 417, p. 332, the court says:

"No consideration of equity can enter into the determination of the right of privilege. If the law does not grant the privilege the court is powerless to do so. The rule is too familiar to need citation of authority that privileges are never allowed, except when expressly granted and only by virtue of compliance with legal requirements, essential to their creation and existence. They can not be extended by analogy or implication.

"The privileges and mortgages of the former credit are not transferred to that which is substituted for it unless the creditor has expressly reserved them. C. C. Art. 2195.

"When novation takes place by the substitution of a new debtor, the original privileges and mortgages of the credit can not be transferred to the property of the new debtor. C. C. Art. 2196."

A privilege under the law does not remain in abeyance like a mortgage (C. C. Art. 3304) or pledge (C. C. Art. 3144) if the debtor is not the owner of the property at the time of the contract, but subsequently attaches if he becomes the owner, but ceases instantly and finally when the vendee parts with his possession as owner.

The chattel mortgage reserved by A. Baldwin & Co., Ltd., and granted by Tilton, not having been recorded in the parish of Acadia, and Walton McCain not having expressly assumed the existing privilege in plaintiff's favor in buying the property from Tilton, it ceased to exist as a matter of law, the stipulations and agreements between Tilton and A. Baldwin & Co., Ltd., in the act of chattel mortgage, notwithstanding plaintiff's privilege was lost and had no existence after Tilton sold and delivered the property to McCain on October 18, 1919. When McCain sold and delivered the property to C. L. & H. B. Redlich and G. A. Baillio, December 12, 1919, the vendor's privilege which had existed on it while it belonged to Tilton was extinct. It was therefore extinct and without existence as a matter of law on June 7, 1920, when McCain assumed the balance due on the engine by Tilton to A. Baldwin & Co., Ltd., and had no existence and could not attach, on April 9, 1921, when McCain reacquired the property from Redlich, etc. Intervenor urges in its brief that when McCain assumed the balance due on the purchase price of the engine that Tilton's debt was to that extent extinguished and that the privilege was extinguished with the debt. If the debt was extinguished then the privilege was extinguished as a matter of course. C. C. Art. 3277. But intervenor's petition does no allege that Tilton's debt on the engine was extinguished and the evidence does not satisfactorily establish such a novation. The opinion and decree of the lower court is not based on that ground. We, therefore, do not pass on this contention of the intervenor, but the judgment appealed from is correct and will be affirmed for the reasons assigned.

Judgment affirmed, plaintiff and appellant to pay the cost in both courts.